1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-Filed 8/20/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

LESSIE JAMES, individually and SHIESHA
LEOPOLD and CATIA GOODE, individually and
on behalf of all others similarly situated,

                  Plaintiffs,

    v.

CAREER SYSTEM DEVELOPMENT
CORPORATION aka JOB CORPS,

                Defendant.

Case Number C 05-4125

ORDER[1] DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING IN
PART AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

      Defendant Career Systems Development Corporation ("CSDC") is a privately held

company that contracts with the Employment and Training Administration of the United States

Department of Labor ("DOL") to operate the San Jose Job Corps Center ("Center"), an education

and vocational training program for economically-disadvantaged persons.  Plaintiff Leslie James

("James"), a former CSDC employee, brings this action asserting individual claims of racial

discrimination.  Shiesha Leopold and Catia Goode, former program participants, join James as

---

[1] This disposition is not designated for publication and may not be cited.

1  plaintiffs and assert class action claims.  CSDC moves for summary judgment as to James's
2  claims.  James moves for partial summary judgment with respect to her retaliation claim.

3

4                                    **I.  BACKGROUND**

5          James began her employment with CSDC in December 1996 as a Resident Advisor
6  ("RA") in CSDC's female dormitories.  Her application for employment stated explicitly that her
7  employment was to be at-will.  Exh. 9.  James agreed to adhere to CSDC's "Core Value" policy,
8  which encourages individual accountability, growth, integrity, respect, safety and commitment.
9  The Core Values were contained in CSDC's employee handbook, posted in the Center and
10 communicated to employees during workshops and training programs throughout the year.  *See*
11 Exh. 9; Sorensen Decl. ¶9.

12         Beginning in 1998, James began to complain of racial discrimination.  James alleges that
13 during the Christmas party that year, a fellow employee made a racist joke about eating
14 watermelons. [2]   After the party, James complained to CSDC's Equal Employment Opportunity
15 ("EEO") officer, Edward Ruiz ("Ruiz").  The fellow employee apologized publicly both orally
16 and in writing.  Exh 1, 112:15-113:2.  Following this incident, James filed several additional
17 complaints with Ruiz, alleging that her co-workers diminished her authority, disregarded her
18 write-ups of students, sabotaged her work, interfered with her medical treatment and denied her
19 access to handicap parking.   Exh. 1; Exh 2.  James does not dispute that CSDC investigated her
20 complaints and conducted meetings attended by her supervisor, Residential Living Manager John
21 Jacob ("Jacob"), manager John Adams ("Adams") and Ruiz.  In 2000, James complained to Ruiz
22 that her performance appraisals and salary adjustments had been affected adversely by the many
23 complaints she had filed.  She made a similar complaint in 2003.

24         James also filed at least two formal complaints with administrative agencies.  In 2001,

25

26         [2] In her moving papers, James states that this incident took place in 2000.  However, in
27 she stated in her deposition testimony that the alleged incident occurred during CSDC's 1998
   Christmas party.

28

                                             2

1   James filed a charge of discrimination with the Equal Employment Opportunity Commission

2   ("EEOC") alleging that she had been forced to complete other employees' job duties, that her

3   reviews had been downgraded, that she was denied her right to park in a handicap space; that her

4   student write-ups were improperly dismissed, and that her work was audited without reason.

5   Exh. 23.; Exh. 36.   CSDC denied the allegations and cooperated in the EEOC's investigation.

6   In December 2002, the EEOC found there was insufficient evidence to support a finding of a

7   violation.  Exh. 25.

8         In 2003, James was involved in a dispute with a co-worker.  CSDC claims that James

9   acted improperly by using logbooks to complain about the co-worker's behavior and by engaging

10  in a heated verbal confrontation.  CSDC also claims that while the co-worker was willing to

11  accept responsibility for her actions in accordance with the Core Values, James refused.  *See*

12  Exh. 1; Exh. 27; Exh. 32; Exh. 33.  CSDC contends that this was only one example of the

13  behavioral problems that led to James's termination.

14        James's employment was terminated in June 2005.  In July 2005, James filed a second

15  EEOC complaint, repeating her earlier allegations and also alleging that she had been wrongfully

16  terminated.  After obtaining a right to sue letter, James filed the instant action.

17        James asserts claims for: (1) retaliation and discrimination with respect to compensation,

18  terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act

19  of 1964, 42 U.S.C. § 2000e ("Title VII"); (2) impairment of the right to perform, modify and

20  terminate an employment contract and to enjoy all benefits, privileges, terms and conditions of

21  the contractual relationship in violation of 42 U.S.C. § 1981; (3) breach of contract for

22  termination without legitimate cause; (4) wrongful termination in violation of public policy; and

23  (5) intentional infliction of emotional distress.  CSDC moves for summary judgment on each of

24  these claims.  James moves for partial summary judgment with respect to her first claim.

25                           **II.  LEGAL STANDARD**

26        A motion for summary judgment should be granted if there is no genuine issue of

27  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

28

3

1    56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

2    the initial burden of informing the Court of the basis for the motion and identifying the portions

3    of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

4    demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

5    317, 323 (1986).

6        If the moving party meets this initial burden, the burden shifts to the non-moving party to

7    present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

8    *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

9    evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

10   party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

11   *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

12                                          **III.  DISCUSSION**

13   1.   Discrimination claim

14           a.      James's Termination as an Act of Discrimination

15       To establish a *prima facie* case of discrimination, a plaintiff must show: (1) membership

16   in a protected class; (2) satisfactory performance; (3) that the plaintiff was subjected to an

17   adverse employment action; and (4) that others not in the protected class were treated differently.

18   *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).  If

19   the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a

20   legitimate, nondiscriminatory reason for the plaintiff's termination.  *Texas Dep't of Cmty. Affairs*

21   *v. Burdine*, 450 U.S. 248, 254-55 (1981).  If the employer carries its burden, the presumption of

22   discrimination "simply drops out of the picture."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 510-

23   11 (1993).  The burden then shifts to the plaintiff to show that the defendant's proffered

24   explanation is merely a pretext for the unlawful act. *Washington v. Garrett*, 10 F.3d 1421, 1432

25   (9th Cir. 1993).  CSDC claims that it is entitled to summary judgment because James cannot

26   establish that her performance was satisfactory and also because it had a legitimate reason for

27   terminating James's employment.  James argues that she has established her *prima facie* case and

28

Case No. C05-4125
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1    that CSDC's purported reason for termination is pretextual.

2        CSDC asserts that its true and legitimate reason for terminating James's employment

3    was that James's job performance did not accord with CSDC's Core Values. Specifically, CSDC

4    claims that the manner in which James complained of discrimination and otherwise interacted

5    with her co-workers demonstrated that James: (1) failed to learn and let go or embrace change

6    and respect; (2) was unapproachable and did not promote open, clear and honest communication;

7    and (3) refused to work cooperatively with CSDC management to remedy the concerns she raised

8    in her many complaints.  In support of its position, CSDC points to James's behavior during the

9    incident in 2003 and her claim that all of her white co-workers were racist.  CSDC claims that it

10   attempted to deal with James's hostile and disruptive behavior by requesting that she improve her

11   communication skills, but that James refused.

12       James responds by arguing that CSDC's proffered reason for her termination is

13   pretextual.  However, she does not attempt to show that the decision to terminate her in fact was

14   based on race.  Instead, she argues that the true reason for her termination was that "[CSDC]

15   could not deal with her complaints any longer."  Opposition at 21.  While the Court concludes

16   that James has raised a triable issue of fact with respect to her retaliation claim, such allegations

17   standing alone are insufficient to ground a discrimination claim as such.  Accordingly, summary

18   judgment will be granted in favor of CSDC with respect to James's termination except to the

19   extent that James claims that their termination occurred in retaliation for her prior complaints of

20   discrimination.

21           b.      Discrimination during James's employment

22       CSDC asserts that it is entitled to summary judgment with respect to James's claim that

23   of discrimination during her employment because most of the incidents she has alleged occurred

24   prior to September 15, 2004, a date outside the applicable statute of limitations.  Relying on

25   *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999), and other Ninth Circuit cases decided during the

26   1990's, James argues that the continuing violation doctrine allows the court to consider CSDC's

27   conduct during the entire duration of her employment.

28

5

1    As CSDC correctly points out, in *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101

2    (2002), the Supreme Court rejected the continuing violation doctrine as articulated in *Anderson*

3    *v. Reno*.  While the Court did not hold that incidents occurring outside of the statutory period

4    never may be considered, it drew a distinction between claims based on discrete acts and hostile

5    work environment claims, explaining that in cases involving the latter a court may consider acts

6    outside of the period in order to assess liability.  It explained that "[d]iscrete acts such as

7    termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. . . .

8    [each] constitutes a separate actionable unlawful employment practice." *Id*. at 114.  The Court

9    also recognized that with respect to a hostile work environment claim, it may be necessary to

10   consider acts outside of the statutory period in order to evaluate the totality of the circumstances

11   and the frequency of the discriminatory conduct.  *Id*. at 116.

12   "To establish a prima facie case for a hostile work environment claim, [a plaintiff] must

13   raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical

14   conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

15   severe or pervasive to alter the conditions of her employment and create an abusive work

16   environment." *Surell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1109 (9th Cir. 2008).

17   The only acts alleged in James's complaint are discrete acts.  Under *Morgan*, the Court

18   may not consider those acts to the extent that they occurred outside the limitations period.  In her

19   opposition papers, James claims for the first time that she was discriminated against because she

20   was micromanaged in comparison to other RAs, that CSDC was trying to force her to work from

21   home, and that CSDC forced her to work in two dormitories.  *See* James Decl. ¶ 5.  James also

22   points out that she filed many complaints alleging discrimination during her employment.

23   However, even James's new allegations are insufficient to establish that CSDC's conduct was

24   sufficiently severe or pervasive to have created a hostile work environment.  Accordingly, with

25   respect to the portion of James's discrimination claim that is based on alleged conduct during the

26   course of her employment, summary judgment also will be granted in favor of CSDC.

27

28

Case No. C05-4125
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1    2.    Retaliation claim

2           Title VII prohibits an employer from retaliating against a person for opposing an unlawful

3    employment practice or filing a charge, testifying, assisting or participating in any proceedings

4    protected by Title VII.  A *prima facie* case of retaliation has three elements: (1) plaintiff engaged

5    in a protected activity; (2) the employer subjected her to an adverse employment action; and (3)

6    there is a causal ink between the protected activity and the adverse action.  *Passantino*, 212 F.3d

7    at 506.  "[A] causal link my be established by an inference derived from circumstantial evidence

8    such as the employer's knowledge that the [employee] engaged in protected activities and the

9    proximity in time between the protected action and the alleged retaliatory employment." *Jordan*

10   *v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).  CSDC moves for summary judgment on the basis

11   that Plaintiff is unable to establish such a causal link.  James also moves for summary judgment

12   on this claim, asserting that she has satisfied her burden of establishing a *prima facie* case.

13          Focusing on James's initial complaint of discrimination, which was filed in 1998, CSDC

14   contends that the Court should not find a causal link between the complaint and James's

15   termination because such an inference may not be drawn between two events that occurred seven

16   years apart.  CSDC also argues that James's subsequent complaints may not serve as the basis of

17   her claim because James simply repeated the same allegations and thus did not provide any new

18   reason for CSDC to terminate her.

19          James contends, however, that she was terminated in response to a meeting that took

20   place on April 29, 2005.  The purpose of that meeting was to discuss James's complaints, and

21   CSDC, the Coalition of Concerned Citizens, the DOL, and various California political figures

22   were present.  James claims that this meeting was of particular importance because it occurred

23   while the DOL was considering the renewal of CSDC's license.  According to James, the

24   meeting sparked an investigation by the DOL that put renewal of the license in jeopardy.  CSDC

25   disputes that the meeting and the investigation had any impact on the decision to renew its

26   license.  *See* Exh. 38.  CSDC also points out that the DOL conducts a review of CSDC every two

27   years, and CSDC has never been found to discriminate on the basis of race.

28

Case No. C05-4125
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1         As noted above and as is apparent from this discussion, the Court concludes that there is a

2  triable issue of fact with respect to the causal connection between James's termination and the

3  relevant protected act.

4  3.      Breach of Contract

5         CSDC argues that James's claim for breach of contract is insufficient as a matter of law

6  because Jones does not have a written or oral contract of employment that precludes termination

7  "without good, just, or legitimate cause." First Amended Complaint ¶ 47.  CSDC points to

8  evidence that over the course of her employment James signed several documents acknowledging

9  that her employment was at-will.  James did not address this issue in her opposition to the

10 motion, and her counsel conceded at oral argument that her employment was at will.  Exhs. 5-8.

11 Accordingly, summary judgment on this claim will be granted in favor of CSDC.

12 4.      Intentional Infliction of Emotional Distress

13        To establish a claim for intentional infliction of emotional distress, a plaintiff must show;

14 (1) extreme and outrageous conduct by the defendant; (2) intention to cause emotional distress,

15 or reckless disregard; (3) severe emotional suffering; and (4) actual and proximate causation of

16 the emotional distress.  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 (1987).

17 "Severe emotional distress is not mild or brief; it must be so substantial or long lasting that no

18 reasonable person in a civilized society should be expected to bear it."  *Fletcher v. W. Nat'l Life*

19 *Ins. Co.*, 10 Cal. App. 3d 376, 367 (1970).

20        James claims that she suffered from stress and high blood pressure as a result of her

21 termination.  However, she also admits that she was diagnosed with hypertension in 2002, three

22 years before her termination.  Exh. 2, 447:20-450:3.  James has not shown that she has

23 experienced substantial or long-lasting suffering, nor does make any showing with respect to

24 CSDC's state of mind or actual or proximate cause.  Based on the sparse record before it, the

25 Court concludes as a matter of law that James's symptoms are not "so substantial or long lasting"

26 as to rise to the level of severe emotional distress.  Accordingly, summary judgment on this claim

27 will be granted in favor of CSDC.

28

Case No. C05-4125
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1

**IV.  ORDER**

2      Good cause therefor appearing, IT IS HEREBY ORDERED that James's motion for

3  partial summary judgment is DENIED.  CSDC's  motion for summary judgment is GRANTED

4  in part and DENIED in part as set forth above.  James's claim that she was terminated in

5  retaliation for her complaints of racial discrimination remains to be tried.

6

7  DATED: August 20, 2008

8

9                                                    _____

10                                                    JEREMY FOGEL
                                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1   This Order has been served upon the following persons:

2

3   Jared Robinson Smith          jaredsmith@yahoo.com

4   William Frederick Schauman          wschauman@schauman-hubins.com

5   Jonathan David Andrews          jandrews@albblaw.com

6   Truth a. Fisher          tfisher@gordonrees.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C05-4125
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)